**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DISTRICT**

VT GRIFFIN SERVICES, INC.,            *

        Plaintiff,            *

        v.            *            Civil Action No. AW-06-3387

FIELD SUPPORT SERVICES, INC.,            *

        Defendant.            *
                     ****

## MEMORANDUM OPINION

Plaintiff VT Griffin Services, Inc. ("VT Griffin" or "Plaintiff") brings this action against Defendant Field Support Services, Inc. ("FSSI" or "Defendant). On March 2, 2007, Defendant filed a Motion to Dismiss and Motion for More Definite Statement of Defendant Field Support Services, Inc. [11]. Plaintiff opposes the motion. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motion. On August 15, 2007, the Court held a telephonic hearing concerning the motions and heard from all the parties. Having considered the arguments of Plaintiff and Defendant, and for the reasons articulated at the telephonic hearing and briefly discussed below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendant's motion to dismiss and **DENY** Defendant's motion for more definite statement.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that it entered into a contract ("the Teaming Agreement") with Defendant to create a teaming arrangement between FSSI and VT Griffin for the purpose of exchanging technical information and developing a functional, technical and pricing approach in anticipation of the preparation and submittal of an unsolicited proposal to the United States Army for base

operations and maintenance services at Carlisle Barracks.  *See* Teaming Agreement at ¶ 1(a).

Plaintiff claims that it helped Defendant to prepare a winning proposal by providing Defendant with details concerning the nature of the work, allowing Defendant to properly plan for and estimate the cost of performing its share of the work.  Plaintiff alleges that its efforts helped Defendant prepare a proposal that ultimately allowed Defendant to submit a more competitive bid. Consequently, the Army awarded a contract to FSSI ("Carlisle Prime Contract").  Subsequently, on May 1, 2006, VT Griffin and FSSI both began work on the Carlisle Barracks.  Plaintiff claims that its work as a subcontractor was consistent with the terms that the parties had agreed upon between themselves and expressed in their proposal.

On Friday, April 28, 2006, Defendant sent a letter contract (the "April 28 Letter Offer") to Plaintiff.  Plaintiff alleges that the April 28 Letter Offer stated terms that would be effective during the first month of the Carlisle Work but that FSSI had the right to terminate VT Griffin's subcontract at any time, upon written notice to VT Griffin.  Plaintiff avers that the April 28 Letter Offer did not state any intention, by Defendant, to match the period of performance provided by the terms of the Teaming Agreement.  As such, VT Griffin declined the April 28 Letter offer, yet continued to perform work at the Carlisle Barracks.

For the months of May and June 2006, FSSI paid invoices that VT Griffin had provided for the work during these two months.  On August 2, 2006, FSSI sent a subcontract to VT Griffin, identifying a period of performance which Plaintiff contends was inconsistent with the terms expressed in the Teaming Agreement.  On August 21, 2006, Defendant demanded that Plaintiff adjust billing rates in line with the terms of the Carlisle Prime Contract.  On November 20, 2006, Defendant sent Plaintiff a letter stating that it no longer intended to use VT Griffin for any portion

of the Carlisle Work after December 31, 2006.

Subsequently, on December 19, 2006, VT Griffin filed a five count complaint against FSSI alleging: (1) breach of contract; (2) breach of implied in-fact contract; (3) breach of implied covenant of good faith; (4) quantum meruit/restitution; and (5) unjust enrichment.  Currently pending is Defendant's motion to dismiss and motion for more definite statement.  Plaintiff opposes the motion.  The motion is ripe and now ready for the Court's review.

## STANDARD OF REVIEW

Under Rule 12(b)(6), dismissal of a complaint for failure to state a claim is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).    In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (*citing Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)").  Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Thus, a complaint

may be dismissed as a matter of law if it lacks a cognizable legal theory *or* if it alleges insufficient

facts to support a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d

530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed.

1982)).

## ANALYSIS

Count I: Breach of Contract

The essential elements of a contract under Georgia law are: 1) parties able to contract; 2)

consideration moving to the contract; 3) a subject matter upon which the contract can operate; and

4) the assent of the parties to the terms of the contract. O.C.G.A. § 13-3-1; *TranSouth Fin. Corp. v.*

*Rooks*, 604 S.E.2d 562, 563 (Ga. Ct. App. 2004).   In Georgia, "[i]t is well established that 'no

contract exists until all essential terms have been agreed to, and the failure to agree to even one

essential term means that there is no agreement to be enforced.'" *Kreimer v. Kreimer*, 552 S.E.2d

826 (Ga. 2001) (*quoting Moss v. Moss*, 463 S.E.2d 9 (Ga. 1995)).   "Unless an agreement is reached

as to all terms and conditions and nothing is left to future negotiations, a contract to enter into a

contract in the future is of no effect."   *Malone Const. Co., Inc. v. Westbrook*, 194 S.E.2d 619 (Ga.

Ct. App. 1972) (*citing Wells v. H.W. Lay & Co.*, 50 S.E.2d 755 (Ga. Ct. App. 1948) and *Russell v.*

*City of Atlanta*, 119 S.E.2d 143 (Ga. Ct. App. 1961)).   "An agreement to reach an agreement is a

contradiction in terms and imposes no obligation on the parties thereto." *Wells*, 50 S.E.2d 755. "If

there was in fact any essential part of the contract upon which the minds of the parties had not met,

or upon which there was not an agreement, even though the negotiations evidenced a complete

willingness, or even an announced determination, to agree in the future upon such issues as might

subsequently arise, it must still follow that a valid and binding contract was not made as of the earlier date." *Russell*, 119 S.E.2d 143.

At the telephonic motions hearing, Defendant argued to the Court that no contract exists between Plaintiff and Defendant, as there was only an "agreement to agree". Plaintiff disagreed with Defendant's classification of the Teaming Agreement as just an "agreement to agree," but asserted that the parties had a "preliminary agreement." It is clear to the Court that Plaintiff and Defendant had some kind of relationship which might better be determined following discovery. But at this point, the Court believes that the parties lacked a meeting of the minds to support an express contract largely because of the negotiations which were to follow and which apparently did take place pursuant to the Teaming Agreement. Nevertheless, the Court finds that Plaintiff has sufficiently stated in the complaint that negotiations leading up to the Teaming Agreement, as well as the representations, actions, and conduct in continuing further negotiations constitute a basis to establish the existence of an implied in fact contract, discussed *infra*. However, with reference to Count the Court has reservations as to whether Plaintiff has stated a cognizable claim for a breach of an express contract involving the Teaming Agreement. Therefore, for the reasons stated at the telephonic hearing and briefly discussed here, the Court will **GRANT** Defendant's motion to dismiss Count I of Plaintiff's Complaint for breach of contract.

Count II: Breach of Implied In Fact Contract

Contracts implied in fact "are true contracts, for the respective obligations of the parties arise from mutual agreement," and only differ from express contracts because the method of acceptance is by conduct rather than words. 7 Ga. Jur. Contracts § 2:2. In a contract implied by law "the obligations of the parties are imposed by law for reasons of equity and without regard for the intent

of the parties."  *Id.*; *see* 17 Am.Jur.2d 334, 335, Contracts, s 3 ("Contracts implied in fact are inferred from the facts and circumstances of the case, and are not formally or explicitly stated in words.  It is often said that the only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, whether oral or written, while in the latter their agreement is arrived at by a consideration of their acts and conduct, and that in both of these cases there is, in fact, a contract existing between the parties, the only difference being in the character of evidence necessary to establish it.  In other words, in an express contract all the terms and conditions are expressed between the parties, while in an implied contract some one or more of the terms and conditions are implied from the conduct of the parties.").

Furthermore, Georgia law recognizes that parties can be as bound to an implied contract as to an express contract.  *Lincoln Land Co. V. Palfery*, 203 S.E.2d 597 (Ga. Ct. App. 1973).  An implied contract is inferred by the law based on reason and not based on explicit language.  *Young v. Lewis*, 29 S.E.2d 267 (Ga. Ct. App. 1944).  When one renders a valuable service for another, which the latter accepts, as alleged here, the law presumes there is an implied obligation to pay a reasonable fee for that service.  The value of the service is based on *quantum meruit*. *Nelson & Hill, P.A. v. Wood*, 537 S.E.2d 670 (Ga. Ct. App. 2000).

Here, Plaintiff adequately avers that the parties' actions and conduct (including the provisions of the Teaming Agreement, the terms of the proposal to the Army, and the alleged intent of the parties) establishes an implied in fact contract that was breached.  Accordingly, at this stage of litigation, for the reasons stated at the telephonic hearing, the Court finds that Plaintiff has sufficiently pled a cognizable claim for breach of implied in fact contract.  Therefore, the Court will DENY Defendant's  motion to dismiss Count II of Plaintiff's Complaint.

Count III: Breach of Implied Covenant of good Faith

Under Georgia law, the implied covenant of good faith and fair dealing in performing a contract has a basis in both statutory and common law.  The Uniform Commercial Code establishes a duty of good faith in performance for contracts governed thereunder, and there is a general statutory requirement to perform substantially within the spirit and letter of a contract."  *Stuart Enters. Int'l, Inc. v. Peykan, Inc.*, 555 S.E.2d 881, 883 (Ga. Ct. App. 2001) (*citing* O.C.G.A. § 11-1-203; § 13-4-20).  There is also a duty under the common law to "diligently and in good faith seek to comply with all portions of the terms of a contract."  *Id.* at 884.  However, "[t]he covenant to perform in good faith is not an independent contract term.  It is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms de facto when performance is maintained de jure."  *Id.* (*citing Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir.1990)).  Accordingly, the Court will GRANT Defendant's motion to dismiss Plaintiff's independent claim for breach of implied covenant of good faith.  Although the Court finds that Plaintiff cannot sustain an independent claim based on the covenant of good faith and fair dealing, the covenant is still applicable when considering issues of performance and of alleged breach.

Count IV: *Quantum Meruit*/Restitution

Under Georgia law, a party "is estopped to recover in *quantum meruit* where there exists an express agreement." *Gerdes v. Russell Rowe Comms.*, 232 Ga. App. 534, 537 (Ga. Ct. App. 1998). However, "[t]he reasonable value of extra work performed in addition to what the contract contemplated can be recovered in *quantum meruit*." *Id.*  *Quantum meruit* relies on an implied promise of compensation. *Fortner v. McCorkle*, 50 S.E.2d 250 (Ga. Ct. App. 1948).  To recover for

services rendered based upon *quantum meruit*, the plaintiff must show:  (1) that his performed service had value to the defendant; (2) that the defendant requested or accepted the service; (3) that defendant did not compensate plaintiff for the service; (4) that plaintiff expected compensation for the service performed.  *Synergy Worldwide, Inc. v. Long, Haymes, Carr, Inc.*, 44 F.Supp.2d 1348 (N.D. Ga. 1998).

Under OCGA § 9-2-7, this Code section provides an action for *quantum meruit* where services were rendered and materials were furnished, and which were accepted by and valuable to the recipient; acceptance and benefit conferred upon the recipient gives rise to the presumption of a legal obligation to pay for the value.  *Quantum meruit* is not available when there is an express contract; however, if the contract is void, is repudiated, or can only be implied, then *quantum meruit* will allow a recovery if the work or service was accepted and if it had value to the recipient.  *See Stowers v. Hall*, 283 S.E.2d 714 (Ga. Ct. App. 1981); *Brumby v. Smith & Plaster Co. of Ga.*, 181 S.E.2d 303 (Ga. Ct. App. 1971).  Here, the Court has already expressed its reservations with respect to the existence of an express agreement and therefore, at this stage of litigation, Plaintiff's *quantum meruit* claim cannot be dismissed.  Therefore, the Court will DENY Defendant's motion to dismiss Count VI of Plaintiff's Complaint.

Count V: Unjust Enrichment

As with the claim for *quantum meruit* in Count IV, the claim for unjust enrichment is another theory of restitution designed to disgorge benefits unjustly conferred upon another.  Under Georgia law, an unjust enrichment claim requires the plaintiff to establish the following: (1) that the plaintiff conferred a benefit on the defendant and (2) that equity requires the defendant to compensate the plaintiff for this benefit.  *Chem-Nuclear Sys., Inc. v. Arivec Chems., Inc.*, 978 F.Supp. 1105, 1110

(N.D. Ga. 1997) (*citing Engram v. Engram*, 463 S.E.2d 12 (Ga. 1995)). "Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." O.C.G.A. § 9-2-7.

"The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Smith Serv. Oil Co. v. Parker*, 549 S.E.2d 485 (Ga. Ct. App. 2001).  Thus, unjust enrichment is available only when there is no legal contract.  *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1413 (11th Cir.1998) (*citing Regional Pacesetters, Inc. v. Halpern Enters. Inc.*, 300 S.E.2d 180 (Ga. Ct. App. 1983)).  Here, there is no express contract.  Furthermore, Plaintiff claims that there has been a benefit conferred upon Defendant, where Plaintiff completed work on the Carlisle Barracks for the months of August, September, October, and November 2006 and has yet to receive payments from FSSI in satisfaction of these invoices.  As such, the Court finds that Plaintiff has set forth a cognizable claim for unjust enrichment.  Therefore, the Court will DENY Defendant's motion to dismiss Count V of Plaintiff's Complaint.

<u>Alternatively, Motion for More Definite Statement</u>

Motions for a more definite statement are appropriate only where a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading ...."  Fed.R.Civ.P. 12(e).  For the reasons stated at the telephonic motions hearing, the Court does not believe that Count II in Plaintiff's Complaint is so vague that Defendant is precluded from responding to it.  Therefore, the Court will **DENY** Defendant's motion for more definite statement.

## CONCLUSION

For the reasons articulated here and set forth during the telephonic motions hearing, the

9

Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendant's motion to dismiss. Specifically, the Court will **GRANT** Defendant's motion to dismiss as to Count I: Breach of Contract and Count III: Breach of Implied Covenant of Good Faith and **DENY** Defendant's motion to dismiss as to Count II: Breach of Implied In Fact Contract, Count IV: *Quantum Meruit*/Restitution, and Count V: Unjust Enrichment. Furthermore, the Court will **DENY** Defendant's motion for more definite statement. Lastly, the Defendant is **DIRECTED** to answer or otherwise respond to Plaintiff's Complaint within ten (10) days from the entry of this Memorandum Opinion. In the meantime, the Court will issue a scheduling order. An Order consistent with this Memorandum Opinion will follow.

Date:   <u>August 16, 2007</u>                    <u>                /s/                </u>
                                                 Alexander Williams, Jr.
                                                 United States District Court Judge